OPINION
{¶ 1} Stephen Eyler appeals from a judgment overruling his motion for relief from a 1992 judgment that he is the father of Autumn Caldwell, who was born in 1990.
 {¶ 2} The trial court referred Eyler's motion to its magistrate who, after an evidentiary hearing, overruled the motion. Eyler filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision as the judgment of the court.
 {¶ 3} Eyler advances a single assignment of error.
 {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTIONS BY FAILING TO PROPERLY APPLY OHIO REVISED CODE 3119.926 WHICH MANDATES THAT A COURT GRANT RELIEF FROM FINAL JUDGMENT OF PATERNITY WHERE GENETIC TESTING SHOWS A ZERO PERCENT PROBABILITY THAT A MALE PERSON IS NOT THE FATHER OF THE CHILD."
 {¶ 5} R.C. 3119.961 and .962 provide that an adjudicated father may be relieved of a judgment of paternity where genetic testing establishes a zero percent probability that the adjudicated father is the natural father of the child in question — R.C. 3119.962(A)(1)(a) — and other specified circumstances do not apply. See R.C.3119.962(A)(1)(b)(c), B. Pertinent to this appeal are R.C.3119.962(B)(1)(3). Collectively, these subsections provide that relief shall not be granted if the adjudicated father knew he was not the natural father before (1) being required to support the child by a child support order: subsection (B)(1) referring to division (A)(2)(a) and/or (2) admitting or acknowledging himself to be the child's father: subsection (B)(3).
 {¶ 6} With these provisions in mind, we turn to the facts of this case, which were ably set forth by the magistrate and which we, in the interest of judicial economy, set forth as part of our opinion.
 {¶ 7} "1. On April 1, 1991, a Complaint/Motion to Determine Parentage was filed by Tracey Caldwell, nka Tracey Gabbard, to establish the paternal relationship between Steve D. Eyler and her two children, Taryn J. Caldwell, DOB July 22, 1988 and Autumn P. Caldwell, DOB April 16, 1990.
 {¶ 8} "2. A hearing was held February 21, 1992 during which both parties were present and the Court found Steve Eyler to be the father of both Taryn and Autumn Caldwell and properly ordered child support.
 {¶ 9} "3. Neither prior to or during the February 21, 1992 hearing did Steve Eyler request blood tests or any other genetic testing to verify or challenge his paternal relationship with either child.
 {¶ 10} "4. In the fall of 1997, Eyler became aware that although he is Taryn's father, he might not be Autumn's father.
 {¶ 11} "5. In February 1998, Eyler sought legal counsel on the issue of Autumn's paternity.
 {¶ 12} "6. On February 2, 1998, by and through counsel, Eyler filed a Motion to Vacate Judgment of Paternity, Civil Rule 60(B) and Request for Genetic Testing.
 {¶ 13} "7. On May 28, 1998, the Court ordered the parties and the children to submit to genetic testing at Compunet Labs.
 {¶ 14} "8. On June 8, 1998, the parties submitted to the testing which results were filed with the Court on July 21, 1998. The test results state: `The alleged father, Steve Eyler, is excluded as the biological father of the child, Autumn Caldwell, because he lacks the genetic markers that must be contributed to the child by the biological father.'
 {¶ 15} "9. On August 27, 1998 a Memorandum Contra Defendant's Motion to Vacate Judgment of Paternity was filed on behalf of Ms. Gabbard.
 {¶ 16} "10. After numerous continuances, this matter finally came before the Court on January 22, 1999, at which time both parties were represented, waived their right to a hearing, and filed an Agreed Entry Reducing Child Support, Arrearage and Allocation of Medical Expenses.
 {¶ 17} "11. Paragraph 1 of that Agreed Entry filed February 12, 1999 specifically addresses the issue of Autumn's paternity, stating:
 {¶ 18} "That the Paternity of both Taryn J. Caldwell and Autumn P. Caldwell shall remain as previously set forth in the record, with the Defendant Stephen D. Eyler being declared the legal father of both children.
 {¶ 19} "12. Prior to entering into the Agreed Entry, Steve Eyler knew the genetic test results excluded him as Autumn's father.
 {¶ 20} "13. On December 22, 2000, Eyler by and through counsel filed a Motion For Relief From Judgment Finding Paternity and Request to Terminate Child Support and Waive Arrearage. The basis of this motion was the newly enacted O.R.C. 3113.2111, now codified at 3119.926. (sic)
 {¶ 21} "14. The parties appeared February 2, 2001. At that time, Ms. Gabbard requested an attorney and the matter was reset.
 {¶ 22} "15. On March 16, 2001 a pretrial conference was held at which both parties and their attorneys appeared. Several pretrial orders were established, including that parties submit to another genetic test.
 {¶ 23} "16. The samples were collected on April 11, 2001 and the test results were provided to counsel.
 {¶ 24} "17. Again, this genetic test excluded Eyler as the biological father of Autumn Caldwell. These test results were stipulated by the parties and admitted into the record as Joint Exhibit #1 during the hearing on this Motion held May 8, 2001."
 {¶ 25} In overruling Eyler's motion for relief from judgment, the magistrate reasoned, in part, as follows:
 {¶ 26} "In the case at bar, Steve Eyler suspected he was not Autumn's father in the fall of 1997. He sought legal advice and filed a 60(B) Motion. During the pendency of the Motion, genetic tests were performed which supported Eyler's belief he was not Autumn's father. In fact, the results specifically state he is excluded from possibility.
 {¶ 27} "Despite these genetic tests results, Eyler agreed to remain the legal father of Autumn Caldwell as previously set forth in the Court record. Additionally, the Agreed Entry in no way states that Eyler is relieved of his obligation to support Autumn. Although both Eyler and Gabbard testified that the reduction in the child support was a `package deal' which included that Eyler remain Autumn's legal father, the parties did not agree, nor is it set forth in the entry, that the child support was for only one child, Taryn. Eyler attempted to distinguish his `agreement' from an `admission'; however, it is immaterial for purposes of this Decision. Therefore, under R.C. 3119.962(A)(2)(a), Eyler was required to support the child by a child support order. R.C.3119.962(B)(1).
 {¶ 28} "Also in this February 12, 1999 Entry, Eyler agreed to remain the legal father of both children. This issue is specifically addressed in R.C. 3119.962(B)(3) which states that a court shall not grant relief if it finds by a preponderance of the evidence that, knowing he was not the natural father of the child, `the person or male minor otherwise admitted or acknowledged himself to be the child's father.'
 {¶ 29} "Hence, the movant, Steven D. Eyler, under two separate statutory subsections, is NOT entitled to the relief sought. First, he agreed to paid (sic) child support. R.C. 3119.962(B)(1). Secondly, and also contained in the February 12, 1999, Eyler agreed to remain legally designated as Autumn's father. R.C. 3119.962(B)(3). Each of these things was done after genetic testing clearly established that Eyler was not the child's father."
 {¶ 30} The gist of Eyler's argument on appeal is that he has not acknowledged or admitted that he is Autumn's father. He contends that the agreed entry of February 12, 1999, when considered in conjunction with the May 8, 2001 hearing testimony, established this lack of admission or acknowledgment of paternity.
 {¶ 31} He claims that as of February 12, 1999, both the child's mother and he knew he was not Autumn's father and that in light of this information, his child support obligation was reduced from $481 per month to $284 per month and $5,000 in arrearage was forgiven. He contends his reason for agreeing to "being declared the legal father of both children" was to assure that both children were covered by his health insurance through his employer. He claims the agreed entry preceded the enactment of R.C. 3119.961 et seq. and this was as much relief he could obtain at the time.
 {¶ 32} The evidence at the hearing before the magistrate supports Eyler's contentions as to the basis for the February 12, 1999 agreed entry. But even so, we fail to see how the agreed entry can be anything other than an acknowledgment that Eyler is Autumn's natural father. In an entry filed March 20, 1992, the trial court found Eyler to be the father of Taryn and Autumn Caldwell. The agreed entry of February 12, 1999 stated:
 {¶ 33} "This cause came on for hearing on the 22th (sic) day of January, 1999 upon the Motion to Vacate Judgment of Paternity as filed by the Defendant Stephen D. Eyler on February 2, 1998 and Plaintiff's Motion in opposition filed for record on August 27, 1998.
 {¶ 34} "Present for this matter was the Plaintiff Tracy Billhimer, her Attorney Samuel L. Huffman, the Defendant Stephen D. Eyler along with his Attorney Joseph K. Warden. The parties herein waive their right to hearing and to a decision and permanent order of the Magistrate, the right to appeal said decision, and upon lengthy discussions of the issues involved, are agreed as follows:
 {¶ 35} "1. That the Paternity of both Taryn J. Caldwell and Autumn P. Caldwell shall remain as previously set forth in the record, with the Defendant Stephen D. Eyler being declared the legal father of both children." See "acknowledge" and "acknowledgment" as defined in Black's Law Dictionary (5th Ed.) P. 21.
 {¶ 36} Eyler does not argue that after learning he was not Autumn's father, he was not required to support her by a child support order. We believe this argument, if made, would also fail. The agreed entry is a child support order. Although monthly child support was reduced significantly, it was not allocated only to Taryn's support. It was "further agreed . . . that Stephen Eyler shall pay 100% of the medical expenses of the minor children Autumn Caldwell and Taryn Caldwell" and that the mother and Eyler would split dental and optical expenses 40%/60% respectively.
 {¶ 37} In our judgment, the magistrate and trial court properly construed R.C. 3119.962 and properly applied the applicable provisions to the facts.
 {¶ 38} The assignment of error is overruled.
 {¶ 39} The judgment will be affirmed.
BROGAN, J. and YOUNG, J., concur.